Good morning, your honors. May it please the court. I'm here this morning representing William Babcock, who is the defendant in the court below, and I'd like to reserve five of my minutes for rebuttal, if I may. Thank you. There are two issues which I raised in the brief, and I'd like to address both of those with the court, but I'd like to address them in reverse order this morning. So I'd like to start with the argument that the 4B1.5 enhancement was improper in this case because the prior conviction that the district court relied upon was not countable under the guidelines and therefore shouldn't have been used to enhance the sentence under 4B1.5. And that prior conviction was clearly not, everybody admitted that it wasn't countable under 4A1.2 of the guidelines that was assigned. Give us words in English, please. I don't have all these numbers in my head. I can't tick them off, so you're going to have to tell me what you mean in the English language. Sure. So he had a prior conviction for corruption of a minor back in 1998, and that conviction wasn't countable under the sentencing guidelines. In other words, it wasn't assigned any criminal history points because it was too old. It had occurred in excess of ten years prior to the instant offense. So the probation officer couldn't assign it any criminal history points whatsoever. Nonetheless, that particular conviction was used under 4B1.5, which is the enhancement that you give for repeat sexual offenders. What does that say precisely? That actually does two things. It enhances the sentence, depending on what the statutory max and all that is. Without regard to how long ago it was. Well, that's the issue for today. I argue that there is a temporal limitation on that enhancement. My friend and opposing counsel says that there is no temporal. Where do you get the temporal limitation? I get it from several different sources, the primary one being 4A1.2 itself. That's a different section than the section that you're dealing with. It's the same chapter of the sentencing guidelines, and that chapter deals with criminal history. So couldn't the argument be made that if the temporal limit is in 4A1.2, but not in 4A1.5, that the Sentencing Commission was very thoughtful in deciding not to put it in 4A1.5? I disagree with that. I think that when you look at the guidelines, and that's why I've cited the Graham case, which the Graham case talks about an enhancement for prior convictions having to do with either career offender or having to do with an 851 enhancement under the statute. The Graham case drew a distinction between the guidelines and the statute in that case, and said that the guidelines have a temporal limitation on them that the statute does not. To read 4B1.5 and say that that has no temporal limitation when there's nothing in it that says that there's no temporal limitation sets it apart from every other section of Chapter 4. And when you're looking at Chapter 4, again back to 4A1.2, it's describing prior offense. And in Chapter 4B1.5... What's wrong with leaving it up to the sentencing judge to determine in light of the facts of this particular case whether it should be cut off, to what extent it should be used as a mitigating or non-mitigating factor? Well, in this case actually, Your Honor, the sentencing judge had a concern about how old this case was. And as a matter of fact, throughout the sentencing, the sentencing hearing stated on the record that he had a real problem with the fact that it was such an old case. And he said, but my understanding is that the guidelines say that it counts, therefore we all agree it counts, therefore I need to use it. But the court did actually impose a downward variance from what it thought were the correct guidelines in this case, which is... That's the judgment that this district judge decided that I'll count the older conviction, but I'm going to offset it with a reduction. Yeah, and it's more than that. It's not, I'll count it... What's wrong with that as a way of going about sentencing? Well, because number one, he thought that he must count it. Not that he could count it, but that he felt constrained to count it in the guidelines calculation. So then his guidelines became 235 to 293, he imposed a sentence of 190, which the judge felt was a downward variation based upon what he could do. Had this enhancement not been imposed, the guidelines would have been 120 to 150. And under that scenario, it was highly unlikely that the court would have imposed a sentence of 190 months at that point. So it does make a huge difference in the overall sentence if this particular judge, and again, this particular judge was struggling with this particular question, if the judge felt that he wasn't required to impose that enhancement, he very well may not have come to the determination of a 191 sentence in this case. Where exactly does he say, I must do this? Did he make a statement that I am bound by law to count this? He did. He did in the sentencing hearing. When I come up on rebuttal, I can probably get you chapter and verse. I don't think that, you know, I'm using the term, I must, and I don't know if the sentencing transcript goes so far as to where he says that exact word, I must, but he makes it clear that he believes he is bound by this enhancement. I don't think there's any question in the sentence. Looking at the sentencing transcript, he is expressing concern and then says, but nonetheless, the guideline range is computed as 235 to 293. So he clearly applies the guideline. As to whether that is a statement that he must, I suppose you could make that argument, but then you've got a couple of pages later where he says, so I have some concern that the age of the offense that imposed the guideline 4B1.5 is old, but at the same time, there are many other offenses, at least one of which involved a minor. The court is not convinced that age alone would be enough to discount the enhancement. And then he says 90 months is what comes to him as the right amount. So it seems like the district judge is starting with the guideline, applying the guideline, and then definitely varying from the guideline. So your point is that if he'd started without the guideline, he would have ended up at a lower amount. Yes. If he would have started out with what I believe is the correct guideline, which is 120 to 150, then he would have had to have come up with reasons to vary upward from that point to get to the 190, which I don't believe on this record he would have gotten to. So unless there are any other questions with regards to that particular issue, I'd like to spend a couple of minutes talking about the lifetime supervised release. And I think that the record in this case doesn't support, number one, there's no findings to support. As a practical matter of policy, what do you do in these cases where the defendant is a threat perhaps for his lifetime? You don't know what is going to happen in the future. You know, there's a case in which a fellow was a pedophile and he assaulted a young girl, and they found out that what had happened was he had a tumor in his brain. They took the tumor out and the pedophilia went away. And a few years later he began to have the same propensity, and they found that the tumor was growing again. We don't know what causes these things, how permanent they are or impermanent they are. And the only way I know that you could deal with that is the way this judge dealt with it. Well, Your Honor, the guidelines allow for a term of supervised release. In this case, I believe it was anywhere from 10 years up to life. And don't they recommend, isn't there a presumption here? There is a presumption of life in this case. But even though there's a presumption of life, the court is still required to consider the range, at least make some consideration of the range in this case. And I do agree with you that it is a problem, Judge Merritt, but the court has to make a determination. It comes down to, this defendant was in his 30s, I think, when he was sentenced in his mid-30s, so at 190 months he gets out when he's 50. Is 30 years of supervised release enough, from 30 to age 80? Is that enough time for us to look at him to make sure he doesn't re-offend? Is 20 years enough? The problem is that there's no even consideration of anything other than life in these cases. The way these guidelines, unfortunately, are constructed. We don't have parole. We don't have any way to modify things in the future under 3582. You know, I mean, we're stuck with this kind of situation. And if I can answer that, I might see my time's up if I can use a little bit of my rebuttal time. That is the reason why we have the Inman case and the Thompson case, because we can't just draconially say every case is a life supervised release because the guidelines suggest it. Because each case is different, we need to weigh them different. Can someone seek a modification of their length of supervised release based on good behavior in the first few years of supervised release? Yes. So that is a way to deal with a situation. As long as there is no way for the defendant to come into court. What statute provides for that? Do you know? Where you can alter the sentence because, you know, 3582 says you can't alter the sentence. Right. It's, boy, maybe 3583? I'm guessing at this point. I know my friend has the manual, so he'll give me what? 3583? Oh, I guessed right. That's the statute on supervised release. Yes, and being able to request off after one year. There might be a difference depending on the offense that you're convicted of, but you can actually go off after one year. Supervised release and the amount of time you've got to spend incarcerated are different. And the defendant can come in and seek to reduce the supervised release or alter it in some way. Absolutely. Okay. Thank you. Thank you. May it please the Court, Ben Glassman on behalf of the United States. I think we've answered that last question. Let me try to talk through this. That happens with some frequency. Yeah, it does happen sometimes. I'm aware of, within this year in our district, the district court terminating supervised release for a few folks, not for this particular offense, which was enticement of a minor. I think that might give the district court pause, but there is a statute that deals with that. And the number is 3583-something? Yeah. It's ‑‑ Judge Moore, my only hesitation is, without having researched it ahead of time, I'm not positive that there's the same rule for this offense. I don't want to make a representation if I'd be wrong. But as a general matter, yes, it's 3583. And there are ‑‑ there is one of the subsections, I apologize, that does deal with coming back. You mean this kind of thing could be an exception to the principle that you can come in and seek a reduction? Judge Merritt, I just don't want to say something wrong to the court without knowing for sure. I'm not aware of it being an exception, but I haven't specifically ‑‑ But the general rule is that you can seek a modification. Yes, or even a termination after one year. Unlike incarceration. That's right. And the reason for that, the way that works statutorily, is that 3582, which Your Honor mentioned, said you can't modify a term of ‑‑ But you've given it. That's right. No way to get it out. Well, it says ‑‑ Except the Bureau of Prisons and ‑‑ Except for if there's another statutory provision, and 3583 is another statutory provision regarding supervised release. So that's how that works. I want to talk through, hopefully in English, the 4B1.5 enhancement issue. So here's what the guidelines tell the court to do in terms of determining the guidelines. This is at the very first page of the guidelines on instructions about what you're supposed to do. First you calculate the offense level using whatever guidelines are referenced to the offense. Then you calculate the criminal history. And to do the criminal history, you look at Chapter 4A of the guidelines. Period. Then it says, look and see if there's any other adjustments under 4B. And that's where you've got things like career offender that would jump the sentence even after you've done the regular offense level and criminal history. Well, it's in that section where this 4B1.5 is. And that jumps the sentence after you've done the regular offense level, after you've done the criminal history. It jumps it if you've got a prior sex offense conviction. Actually, the actual words of it are if the defendant committed this offense subsequent to sustaining a sex offense conviction. So it does have a time frame on it. It says subsequent to. That's it. That's the restriction. You've got to have it done before you committed this crime. Now, as the court pointed out in talking with my friend, 4A1.2, which is what you do for criminal history, that does have separate time limitations about, well, if it's a year and a day prior sentence, then that's got to be within 10 years. If it's less, it's got to be 15 or something like that. There is no equivalent in 4B1.5 as Judge Moore pointed out. So you'd think that that alone would be a pretty strong indication that there is no time limitation other than the one that's stated in the text of subsequent to. But actually, Judge Moore, I think it's actually an even stronger indication that we have here that that time limitation in 4A1.2 has no application. And again, I think as a preliminary matter, there's no reason to suspect that it would have an application unless there was some indication. But actually, if you look at 4B1.1, which is the career offender that I mentioned earlier, the last application note for career offender says, when you're considering the prior convictions for career offender, you do use 4A1.2's restrictions on timing. And that instruction is not in 4B1.5. So I think it's pretty clear that when the commission wants to put the time restriction in, it knows how to do it and does it. And it has not done it here. And actually, that kind of makes sense because the whole purpose here is to ensure a specific jump in the sentence in a sex offense case where you've got a prior sex offense. And if you look at the referenced statute that's referenced in that guideline section, the referenced statute, 2426, is all about providing a higher sentence in a sex offense case for sex offense recidivist. So it's a specific... Suppose that the person had this first sex offense when he was 19 and now he's 70 and he's had a perfect life in between. Should that old offense be cause for this automatic increase in the sentencing guidelines? I am happy to answer that since 2005 because what I think would happen there is exactly what happened in this case. In that, yes, under the terms of the guidelines, that would count since you said he was 19 and not juvenile, which is a whole other issue. I purposefully did it. Yeah, that's a whole other issue. That made him very young. Yes, right, and he's 70 now. So I think that that would count, but I think there would be a very good equitable argument that might be relevant under 3553A about the history and characteristics of the defendant that the court should exercise its discretion to vary downward from the sentencing guidelines for that reason. And that's what happened in this case. Like the case of the tumor. Perhaps. You can prove the tumor situation, which is the case. The judge could use her own reason and judgment to do something about that. That's right. And that's the discretion that judges have post-Booker, and that's how it worked in this case. You'll recall that not only did the probation officer think this enhancement applied in the government, the defendant, too, explicitly agreed at the trial level that this enhancement applied. He then used the fact that the enhancement applied as the grounds for his argument that a downward variance was appropriate for exactly that reason, and the court gave some weight to that. Do you know what is being proposed by the Sentencing Commission and by others as to how the guidelines regarding sex offenders like this should be treated? There's been a great deal of dispute, difference of opinion among judges, scholars, and so on. Do you know what is being proposed, if anything, about this? My understanding is that the Sentencing Commission came out with a report. It was issued in February 2013 regarding, I believe it had to do principally with the 2G 2.2, which is the guideline for child pornography possession, and it was a lengthy report about the merit of certain of the enhancements that are in that guideline section. I don't believe it has anything to do with this one. No one is suggesting a parole-type system be instituted for things like this that nobody knows what the future holds? No, that would, I think, require a new statute change to the Sentencing Reform Act. Of course, we can't do that. Yeah, can't do that. But actually, I'm glad that Your Honor did raise that point because that actually, I think, factors into the other argument that my colleague made about the lifetime term of supervised release. You know, there are some cases where this court has vacated a lifetime term of supervised release based on an insufficient explanation for why it was imposed, and two of the cases are Inman and Doyle, which my colleague cited in his brief. One of the ways that this case is quite different than those is that, well, besides the fact that the district court did give a pretty thorough explanation, but separate from that, those cases concerned either possession or distribution of child pornography, not enticement of a minor, and all those cases in this circuit, other circuits, that have criticized a reflexive imposition of a lifetime term of supervised release, they kind of make the point of, well, hey, if it was just child pornography possession, does that really warrant lifetime term of supervised release as opposed to a situation where you're, like, enticing a minor? But that's this case. This case is enticement of a minor. Is there a problem with respect to the lifetime supervised release here that there isn't much of a specific explanation by the district judge of why he's doing lifetime supervised release? I do not think so under this court's precedence and under the facts of the case. The reason as to the precedence is that this court has said that if a district court explains the reasons in support of the sentence, that explanation works for both, for all parts of the sentence, the term of imprisonment and the term of supervised release, unless there's some reason to think otherwise. And here the court gave an explanation for the sentence selected and then imposed in one paragraph of transcript both the term of imprisonment and the term of supervised release. So to say that there is nothing specific in the explanation for the term of supervised release, you could just as easily say there's nothing specific for the term of imprisonment. The court gave an explanation and said, having considered all of this, including the age of the offense and varying down, the prior offense and varying downward for that, then imposed the sentence as stated, which included the lifetime term of supervised release. Suppose hypothetically that the district judge had imposed a sentence of 50 months instead of what the guideline range was or what he did of 190 months and then imposed lifetime supervised release. In other words, that there's a really significant downward variance on the term of imprisonment but going the full length on supervised release. Would that be a situation where we would expect a district judge to explain that dichotomy? If the United States were appealing that? I hesitate to say yes, Judge Moore, because what would jump to my mind under those circumstances is that the court was, especially where here the court has talked about the dangerousness of this offender in light of his, and the risk to the public in light of his criminal history and the specific criminal history. I would assume that the district court was using the term of supervised release to ensure the safety of the public, even though the term of imprisonment was not as long as that called for by the guidelines. That would be my first reaction to that, so I'm not sure. Where I think you'd have a different situation is, let's say that both parties, the defendant and the government, came in and recommended a 10-year term of supervised release and say the probation officer also recommended that and then the court kind of, without warning, imposed a lifetime term. That would raise some concern in my mind, and that's the situation in part in Inman. So I do want to emphasize, of course, that as to both of these issues, we're talking about the plain error standard. There was no objection to the procedural reasonableness in terms of the explanation of the term of supervised release, and not only was there no objection, but there was actually agreement that 4B1.5, the prior offense for the guidelines, did apply here. So the court certainly could resolve the case as to both issues without actually addressing whether there was error. It could rely on any of the other prongs of plain error as well, which I could elaborate for the court if it's so inclined. Otherwise, the United States thinks that the district court did a good job in this case and would ask this court to affirm. Thank you. Just a couple of points, Your Honors. With regards to how this case is different than Inman, and it obviously does have some differences, but one similarity is that the defendant in this case did ask for 10 years of supervised release. That's on page 181, page ID page 181. So we have a defendant requesting 10 years of supervised release in this case. The judge imposes a lifetime supervised release in this case, but doesn't explain how he got there or why 10 years was inappropriate. We disagree. We don't think there are any findings as to supervised release on this record at all that support why a lifetime was necessary in this case, as opposed to some other term. With regards to the issue on 4B1.1 Is there a specific provision of the guidelines or statute that requires on supervised release an explanation of the length of the supervised release? Well, I think it's from case laws is where I draw that. The Inman case and the Thompson case and the Doyle case, I think those are the cases that clearly say in this circuit that there has to be some explanation. In this case, this is the statutory maximum amount of supervised release, and there's a litany of cases from this court that talk about when you get close to that extreme on one side or the other of the statutory range, that there needs to be some explanation. We have to consider the offense of conviction here, that this is not just a child pornography case. Oh, absolutely. But we can't imply that the district court, that's why they did it when it's not on the record that that's why they did it. That's what we can't do. We can't guess that that's what the district court had in its mind when there's just no record whatsoever for this court to make a proper review on, and that's the procedural unreasonableness in this case. Can you also take into account what you've informed me of, and that is that this is not written in stone for the future, that the defendant can come in and ask for a reduction and can have a hearing, and that can be fully pursued as to whether in the future it should be done. And, again, if the district court had that in its mind that that was a consideration, I think that would be proper, but this court, again, is just reviewing what the district court did or did not do. There is a district court judge in Cincinnati here that does, in fact, that. He says, I'm going to give you ten years of supervised release, but if you do good, come back and see me after five and we'll talk about cutting it. Then the record's clear. That's what the court was considering, obviously. Here we can't imply that based upon a cold record where it's completely silent on that issue. Why? You're informing me that's what the law is, and until the judge is not going to know what he or she may want to do 10, 15 years from now, depending on how the facts. Yeah, but I'm up here all the time arguing that the district court got it wrong on the law. So there used to be no appeals in these cases. Yeah, yeah, I understand. And let me just finally say as to the 4B1.5 issue, if you look at 4A1.2, and it's Note 8, and that's the applicable time period, and it says Section 4A1.2 D2 and E establishes the time period within which prior sentences are counted. Prior sentences, that's what it means. And a prior sex offense is a prior offense. But that is for 4A1.2 purposes. That is. 4A is a wholly different area than 4B. It is, but that counting method is used in 4B. If you find that it's not used in 4B1.5, it's the only section of 4B where that is not used. Thank you, Your Honor. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?